UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANN SEKMISTRZ,

               Plaintiff,                            Case No. 22-cv-11438

v.

                                               HON. MARK A. GOLDSMITH

CITY OF MELVINDALE et al.,

               Defendants.

_____/

**OPINION & ORDER**
**GRANTING DEFENDANTS' MOTION TO DISMISS (Dkt. 31)**

Plaintiff Ann Sekmistrz, a former employee of the City of Melvindale, brought this case against Defendants the City of Melvindale and Richard Ortiz, the City's Administrator/Finance Director, after Defendants instituted a policy that terminated the health insurance benefits Sekmistrz was receiving as a retiree under her collective bargaining agreement (CBA). Sekmistrz brings claims under the First and Fourteenth Amendments and the Michigan Elliot-Larsen Civil Rights Act, as well as a claim for breach of contract.

Before the Court is Defendants' motion to dismiss (Dkt. 31).[1] For the reasons stated below, the Court grants the motion.

## I. BACKGROUND

According to the amended complaint, Sekmistrz was employed by the City from June 1995 until her retirement on July 1, 2016. Am. Compl. ¶ 10 (Dkt. 30). Before her retirement, she was

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the motions, the briefing includes Sekmistrz's response (Dkt. 33) and Defendants' reply (Dkt. 34).

a member of a union.  Id.  ¶ 11.  The CBA applicable at the time of Sekmistrz's retirement was

effective between January 1, 2015 and December 31, 2018 (CBA #1).  Id. ¶ 12.  CBA #1 contained

the following provision pertaining to health insurance coverage for retirees:

> For Employees who retire after the effective date of this Agreement, and retired
> Employees who already have such coverage provided by the City shall continue in
> the group with coverage for himself and his spouse at the date of retirement, paid
> by the City, subject to the co-pays and deductibles.  Upon federal age eligibility,
> Employees and spouses eligible for Medicare/Medicaid must enroll therein, and the
> City insurance will become secondary.

CBA #1 at PageID.901 (Dkt. 31-2).[2]  Pursuant to this provision, Sekmistrz continued receiving

health insurance coverage after her retirement.  Am. Compl. ¶¶ 14–15.

After CBA #1 expired, the City and the union entered into a second CBA, effective between

January 1, 2019 and December 31, 2022 (CBA #2).  Am Compl. ¶ 16; CBA #2 (Dkt. 31-3).  CBA

#2 had an identical provision regarding health insurance coverage for retirees.  See CBA #2 at

PageID.1005.  Pursuant to this provision, Sekmistrz continued receiving health insurance coverage

after CBA #1 expired.  Am. Compl. ¶¶ 18–19.

In November 2021, the City Council adopted a new policy stating that it would no longer

provide healthcare benefits to retirees under the age of 65 who were otherwise eligible for health

insurance coverage from "another employer as an employee, spouse, or dependent"; "another

employer from a retiree sponsored medical coverage as a retiree, spouse, or dependent";

---

[2] In deciding a Rule 12(b)(6) motion, courts are generally confined to considering the allegations
in the complaint, matters of public record, orders, the record of the case, and exhibits attached to
the complaint.  Amini v. Oberlin Coll., 259 F.3d 493, 502 (6th Cir. 2001).  Additionally, the Court
may consider exhibits attached to a defendant's motion to dismiss "so long as they are referred to
in the complaint and are central to the claims contained therein."  Gavitt v. Born, 835 F.3d 623
(6th Cir. 2016).  Because the collective bargaining agreements attached to Defendants' motion to
dismiss are referred to in Sekmistrz's complaint and are central to her claim, the Court will
consider them.

"Government Programs such as Medicaid, Tricare, or any similar coverage"; or any other source. Id. ¶ 25.  The policy went into effect on January 1, 2022.  Id. ¶¶ 25–26.

Sekmistrz became aware of the new policy in November 2021 when she received a letter from Ortiz requesting information on whether she was eligible for other healthcare insurance coverage.  Id.  ¶¶ 32–33.  The letter advised that, due to the City's financial condition, effective January 1, 2022, "only those who are not eligible for other healthcare may remain with the City's retiree healthcare plan."  Id.  ¶ 35.  Sekmistrz's health insurance coverage was then terminated, pursuant to the policy, as she was eligible for health insurance coverage through her husband's employment.  Id. ¶¶ 36–37.

Sekmistrz filed this action in June 2022 (Dkt. 1).  In response, Defendants filed a motion to dismiss (Dkt. 28).  Because the motion argued, in part, that the complaint did not plead sufficiently detailed or specific factual allegations to articulate a plausible claim, the Court issued an order allowing Sekmistrz the opportunity to file an amended complaint.  See 12/15/23 Order (Dkt. 29).  Pursuant to that order, Sekmistrz filed an amended complaint on December 20, 2024, after which Defendants filed a renewed motion to dismiss.

## II. ANALYSIS[3]

The Court first addresses Sekmistrz's federal claims.  Because the Court finds that Sekmistrz's federal claims must be dismissed, it will decline to exercise supplemental jurisdiction over her state-law claims.

---

[3] To survive a motion to dismiss, a plaintiff must allege "facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

### A. Federal Claims

### 1. Due Process Clause

Sekmistrz claims that the City's decision to terminate her benefits violated the Fourteenth Amendment's due process guarantee, as her "property interest under Michigan law in her continued receipt of the City-provided retiree health insurance benefits coverage was terminated unreasonably, arbitrarily, and/or capriciously. . . ." Am. Compl. ¶ 55.

The substantive due process component of the Fourteenth Amendment bars "certain government actions regardless of the fairness of the procedures used to implement them." Daniels v. Williams, 474 U.S. 327, 331 (1986). Where, as here, no procedural deficiency is alleged, a plaintiff may nonetheless state a due process violation where he or she establishes (i) the existence of a constitutionally protected property interest and (ii) that the state arbitrarily or irrationally undercut that interest. See Williams v. City of Detroit, 54 F.4th 895, 898–899 (6th Cir. 2022).

Defendants argue that the due process claim fails because (i) Sekmistrz has failed to plead a property interest and, (ii) even if the Court were to find a property interest, Sekmistrz has failed to plead that the City's actions were arbitrary and capricious. As explained below, the Court agrees with Defendants.

### i. Property Interest

Property interests are not defined by the Constitution. Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). Rather, they are created and defined by "existing rules or understandings that stem from an independent source such as state law. . . ." Id. Sekmistrz argues that she had a property interest in the continuation of healthcare benefits coverage (i) for her lifetime, or (ii) at least until the expiration of CBA #2. Resp. at 13–18. The Court agrees with Defendants that Sekmistrz has not properly alleged a property interest.

In addressing the question of whether a CBA that offers continuing benefits coverage to retirees vests those benefits for life, the Sixth Circuit has articulated the "clear rule" that "a CBA's general durational clause applies to healthcare benefits unless it contains clear, affirmative language indicating the contrary." Fletcher v. Honeywell Int'l, Inc., 892 F.3d 217, 223 (6th Cir. 2018).

In Gallo v. Moen Inc., 813 F.3d 265 (6th Cir. 2016), for example, retirees sued a former employer for decreasing healthcare benefits it had provided to them under a series of CBAs, arguing that the benefits had vested and could not be taken away. Id. at 268. The Sixth Circuit disagreed, holding that the CBAs did not give the plaintiffs a vested right to lifetime healthcare benefits, based on M&G Polymers USA, LLC v. Tackett, 574 U.S. 427 (2015). Gallo, 813 F.3d at 268–274. In Tackett, the Supreme Court instructed courts "not [to] construe ambiguous writings to create lifetime promises" and noted that the obligations under collective-bargaining agreements "cease, in the ordinary course, upon termination of the bargaining agreement." Tackett, 574 U.S. at 441–442 (punctuation modified). The Supreme Court stated that, "when a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life." Id. at 442.

Following Tackett, the Sixth Circuit concluded that the CBAs in Gallo did not provide lifelong healthcare benefits to the retirees, "first and foremost" because nothing in the CBAs or the agreement specifically committed the employer to providing unalterable benefits to retirees for life. Gallo, 813 F.3d at 269. The Sixth Circuit also emphasized that "everything [the CBAs] sa[id] about the topic was contained in a three-year agreement," citing Tackett for the proposition that the court should "not expect to find lifetime commitments in time-limited agreements." Id.

(punctuation modified).  "When a specific provision of the CBA does not include an end date, [courts] refer to the general durational clause to determine that provision's termination."  Id.

The Sixth Circuit reached the same conclusion in Serafino v. City of Hamtramck, 707 F. App'x 345 (6th Cir. 2017).  The City of Hamtramck had increased the deductibles and co-pays associated with health-insurance plans offered to the retirees under their CBAs.  Id. at 346.  The retirees sued, claiming that this alteration violated the due process guarantees of the Fourteenth Amendment—the same argument Sekmistrz makes here.  Id. at 350.  The Sixth Circuit affirmed the district court's dismissal of the due process claim on the ground that the plaintiffs had not properly alleged the existence of a property interest.  The court held that, because the retiree insurance provisions in the CBAs at issue in Serafino did not include language stating specifically that the parties intended for retiree healthcare to vest for life, the provisions terminated at the date specified by the applicable contracts' general durational clauses.  Id. at 352–353.

The same is true for the CBAs at issue here.  The retiree healthcare benefits provisions were contained in four-year agreements.  See CBA #1 at PageID.836; CBA #2 at PageID.942. Neither of them included any language explicitly committing the City to providing unalterable healthcare benefits to retirees for life.  Therefore, the general durational clause controls the duration of any provision of benefit.  See Gallo, 813 F.3d at 269.  The retiree healthcare provisions "guarantee benefits until the agreement expires, nothing more."  Id.

Additionally, both CBAs at issue here state that healthcare coverage will continue for both new retirees and "retired Employees who already have such coverage provided by the City."  CBA #1 at PageID.901; CBA #2 at PageID.1005.  As the Sixth Circuit noted in Gallo, there would be no need for each new CBA to specify that benefits would continue to be provided to former

employees who retired under prior CBAs if those prior CBAs had created vested rights to such benefits.  Gallo, 813 F.3d at 270.

Sekmistrz argues in her response brief, in the section on her state-law claim for breach of contract, that the Michigan Court of Appeals's opinion in Allen Park Retirees Ass'n v. City of Allen Park, No. 357955, 2023 WL 3555068 (Mich. Ct. App. May 18, 2023) requires a finding that the CBAs at issue here provided her with lifetime healthcare benefits.  Resp. at 10–12.  To the extent that Sekmistrz contends that Allen Park requires the Court to find unalterable healthcare benefits in the context of her due process claim, this argument fails.

The Allen Park court rested its finding of vested benefits on the fact that the provision stated that coverage for retirees would continue "until the retired employee reaches age 65 or is eligible for Medi-Care, (sic) when the City will supplement with a '65 Plan.'"  Allen Park, 2023 WL 3555068, at *5–*6.  The court found that "[t]he explicit language in these CBAs continu[ing] the same plan medical benefits for retirees . . . until the retirees (and surviving non-married spouses) reach 65" establishes "a specific alternative ending date for benefits, beyond the durational clause."  Id. at *6.  It distinguished the CBAs in Allen Park from those in Gallo, which made no mention of benefits ending at age 65 or at any other alternative date.  Id.  The retiree healthcare benefits provisions in the CBAs at issue in this case, similar to those in Allen Park, stated that, "[u]pon federal age eligibility, Employees and spouses eligible for Medicare/Medicaid must enroll therein, and the City insurance will become secondary."  CBA #1 at PageID.901; CBA #2 at PageID.1005.

But this interpretation was explicitly rejected by the Sixth Circuit in <u>Cooper v. Honeywell Int'l, Inc.</u>, 884 F.3d 612 (6th Cir. 2018).[4]  In reversing the district's court grant of a preliminary injunction, the Sixth Circuit held that the plaintiffs were unlikely to succeed on the merits of their claim because the CBA at issue was governed by a general durational clause and the "until age 65" language "did not clearly provide an alternative end date" for the healthcare benefits.  <u>Id.</u> at 614.  The CBA's promise to continue providing benefits "until age 65" lasted only for the duration of the CBA.  <u>Id.</u> at 620.

 <u>Allen Park</u> conflicts directly with Sixth Circuit law, by which this Court is constrained. Following the Sixth Circuit, this Court finds that the CBAs at issue here do not vest Sekmistrz with a lifetime right to insurance benefits coverage, as they contain no language explicitly providing alternate dates other than the general durational clause for the termination of benefits.

Sekmistrz's second argument—that she has a constitutionally protected property interest in the healthcare coverage benefits for at least the duration of CBA #2—also fails.  Her argument here is that CBA #2 entitled her to such benefits at least through its duration, an expectation that was breached when the City's new policy went into effect on January 1, 2022, almost a year before CBA #2 was set to expire.  Resp. at 14.

But "[Sixth Circuit] case law makes clear that a claim for a due-process violation does not lie where the thrust of the plaintiffs' argument is simply breach of contract."  <u>Kaminski v. Coulter</u>, 865 F.3d 339, 348 (6th Cir. 2017).  In her response to Defendants' assertion that she has not pleaded a cognizable property interest, Sekmistrz simply refers to her breach of contract argument,

---

[4] It was also implicitly rejected in <u>Serafino</u>, 707 F. App'x 345 (6th Cir. 2017), as one of the CBAs at issue in that case stated that the retiree benefits would continue until age 65 but the court found that the general durational clause governed nonetheless.  The <u>Allen Park</u> court acknowledged its inconsistency with the <u>Serafino</u> opinion and stated that the court "[found] <u>Serafino</u> unpersuasive and decline[d] to adopt its analysis."  <u>Allen Park</u>, 2023 WL 3555068, at *6.

implying that her property interests for purposes of her Fourteenth Amendment claim are the same as those that make up her claim for breach of contract. Resp. at 18. But where, as here, "the only difference between this [claim] and any other garden-variety breach of contract [claim] is that the City happened to be one of the contracting parties," there is no viable due process claim. Kaminski, 865 F.3d at 348 (punctuation modified).

### ii. Arbitrary and Capricious

Even if Sekmistrz were to have alleged a property interest, her due process claim would nonetheless fail because she has not sufficiently pleaded that Defendants acted arbitrarily or irrationally. See Williams, 54 F.4th at 899.

The standard for finding that a state or locality acted arbitrarily or irrationally is a demanding one. Id. at 900. "Not only must a State or locality act without a legitimate reason, but it also must act without a conceivable one." Id. (emphasis in original). "Federal courts tread lightly in reviewing such claims because we presume that States and municipalities weigh competing interests with reason, local expertise, and ballot-box accountability." Id.

Defendants have put forth a rational reason for adopting the policy: as Sekmistrz pleads in the amended complaint, the letter Ortiz sent on behalf of the City announcing the policy stated that it was due to "rising healthcare costs and the City's financial condition." Am. Compl. ¶ 35. The Sixth Circuit has held an "efficient allocation of government resources" to constitute a legitimate interest. United States v. Collins, 683 F.3d 697, 704 (6th Cir. 2012). Sekmistrz argues that this is not enough for the policy to survive. Resp. at 19. She argues in her response brief: "[I]t was clearly unreasonable, arbitrary, and capricious not to terminate all retiree healthcare benefits if the purpose was to save money and if the City had no obligation to provide such benefits regardless of the ability to obtain such benefits from another source." Id. (emphasis in original). But

Sekmistrz's argument is not persuasive, as the Sixth Circuit "[has] repeatedly stated that a legislative body need not even select the best or the least restrictive method of attaining its goals so long as the means selected are rationally related to those goals." Richardson v. Twp of Brady, 218 F.3d 508, 514 (6th Cir. 2000) (punctuation modified).  Because Defendants' policy is at least rationally related to its goals of ameliorating rising healthcare costs and improving the City's financial condition, it is not arbitrary or capricious.

### 2.  Equal Protection Clause

Sekmistrz also claims that Defendants have breached the equal protection guarantees of the Fourteenth Amendment.  To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment (i) burdens a fundamental right, (ii) targets a suspect class, or (iii) has no rational basis. Center for Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365 (6th Cir. 2011). Sekmistrz brings an equal protection claim under all three theories.

### i.      Burden on the Fundamental Right to Marry

Sekmistrz argues that the policy should be reviewed under strict scrutiny because it "burden[s] the fundamental right of freedom of association vis-à-vis marriage."  Resp. at 20. Courts have long recognized marriage as a fundamental right protected by the Constitution. See Obergefell v. Hodges, 576 U.S. 644, 664 (2015) (collecting cases).

But the Supreme Court has held that only those actions "interfer[ing] directly and substantially with the right to marry" are subject to strict scrutiny.  Zablocki v. Redhail, 434 U.S. 374, 387 (1978).  "Reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship may legitimately be imposed."  Id. at 386–387.  In Zablocki, the Supreme Court held that a Wisconsin statute making court approval a prerequisite to marriage for

certain residents did "interfere directly and substantially with the right to marry" because, in cases in which the court did not approve, it operated to "absolutely prevent" marriage. Id. at 387. In so holding, the Supreme Court distinguished the Wisconsin statute from a situation where an individual's marital status may trigger an incidental burden, such as limiting Social Security benefits. See Califano v. Jobst, 434 U.S. 47 (1977). The provision at issue in Califano mandated that benefits to a dependent child would terminate upon marriage to an individual not eligible for social security benefits. Id. at 48. In upholding the rule, the Supreme Court explained that it was "not rendered invalid simply because some persons who might otherwise have married were deterred by the rule or because some who did marry were burdened thereby." Id. at 54.

As stated by the Sixth Circuit, a state policy places a "direct and substantial burden" on the right to marry "only where a large portion of those affected by the rule are absolutely or largely prevented from marrying, or where those affected by the rule are absolutely or largely prevented from marrying a large portion of the otherwise eligible population of spouses." Vaughn v. Lawrenceburg Power Sys., 269 F.3d 703, 710 (6th Cir. 2001).

In her amended complaint, Sekmistrz alleges that the City's policy resulted in disparate treatment of married people, Am. Compl. ¶ 56, that Defendants intended to discriminate against married people—as evidenced by using the word "spouse" in the policy, id. ¶ 41—, and that "not even one unmarried City retiree who had not yet attained age 65 had his or her City-provided retiree health insurance benefits coverage terminated" under the policy, id. ¶ 44 (emphasis in original).

These allegations do not suffice to establish a "direct and substantial" burden to the right to marry. Sekmistrz's allegations fall far short of the requirement that a regulation significantly interferes with a person's decision to enter into the marital relationship in order for strict scrutiny

to be appropriate.  See Zablocki, 434 U.S. at 386–387.

### ii.   Gender-Based Discrimination

"The threshold element of an equal protection claim is disparate treatment[.]"  Scarbrough v. Morgan Cnty. Bd. of Educ., 470 F.3d 250, 260 (6th Cir. 2006).  To plead disparate treatment based on gender, Sekmistrz would have to allege that similarly situated women were treated differently from similarly situated men.  She has not done so.

The statute at issue is facially neutral.  It distinguishes between retirees who are under 65 and who can obtain alternative health insurance coverage and all other retirees; there is no classification based on—or even mention of—gender.  See CBA #1 at PageID.901; CBA #2 at PageID.1005.  Sekmistrz has not alleged that any male who met the facially neutral criteria—who was under 65 and could obtain alternative health insurance coverage—was treated differently from her or other women.

Where a statute is gender-neutral, a plaintiff can nonetheless plead an equal protection violation by alleging that the statute has both a disparate impact and is the result of "invidious gender-based discrimination."  See Personnel Adm'r of Mass. v. Feeney, 442 U.S. 256, 274 (1979) (punctuation modified).  Sekmistrz appears to proceed under this theory, alleging that the policy was adopted with "the intention, the knowledge, and/or a reckless indifference to the fact that it would adversely affect pre-65 retirees who were . . . females," id. ¶ 45, and "the policy did disproportionately terminate the retiree health insurance benefits coverage of retirees who were . . . female."  Id. ¶ 42.

But these conclusory allegations do not plausibly plead an equal protection claim.  See Harden-Bey v. Rutter, 524 F.3d 789, 796 (6th Cir. 2008) (holding that conclusory allegations of discriminatory intent without specific supporting facts failed to state an equal protection claim).

Sekmistrz has alleged no facts to support her assertion that the policy "target[s] the suspect class of sex," Resp. at 2.  She has set forth no evidence that would indicate that the alleged unequal treatment was in any way the result of purposeful discrimination.  The policy does not reference sex at all.  Sekmistrz's conclusory allegations fall short of the requirements for pleading an equal protection violation.

### iii.    "Rational Basis" Review

Because Sekmistrz has not alleged that the policy burdened a fundamental right or targeted a suspect class, the Court will review the government action under the default "rational basis" standard.  <u>Dog Pound, LLC v. City of Monroe</u>, 558 F. App'x 589 (6th Cir. 2014).

Sekmistrz argues that the policy should fail under rational basis review, as it "cannot be justified by the City's purported and stated business necessities of rising healthcare costs and the City's financial condition."  Am Compl. ¶ 46.  But a classification "must be upheld against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  <u>FCC v. Beach Comm'ns, Inc.</u>, 508 U.S. 307, 313 (1993). As explained above, the City's explanation for the policy—that it was adopted due to "rising healthcare costs and the City's financial condition"—provides a rational basis for the classification.

Sekmistrz's allegations are insufficient to overcome the "presumption of rationality that applies to government classifications."  <u>Andrews, Tr. of Gloria M. Andrews v. City of Mentor</u>, 11 F.4th 462 (6th Cir. 2021) (punctuation modified).  A government "does not deny equal protection merely because the classifications made by its laws are imperfect," <u>Mathews v. De Castro</u>, 429 U.S. 181, 185 (1976) (punctuation modified); the rational basis test requires the Court to find only that the policy is "[r]ationally related to legitimate government interests," <u>Johnson v. Bredesen</u>,

624 F.3d 742, 746 (6th Cir. 2010).  The Court finds that the City's decision to terminate retiree healthcare coverage benefits is at least "rationally related" to its stated justification of financial necessity.

### 3. First Amendment

Sekmistrz also argues that Defendants have violated the First Amendment, as "they discriminated against the Plaintiff and/or imposed an undue burden on the Plaintiff because of her marital status and thus violated her right to freedom of association as guaranteed by the First Amendment." [5]  This claim is premised on the same allegation as the equal protection claim—that the City's policy disproportionately affects retirees who are married and/or female.

The Court will apply the same analysis to Sekmistrz's First Amendment claim as it did to Sekmistrz's allegations that the policy burdened her fundamental right to marriage under the Equal Protection Clause.[6]  See Montgomery v. Carr, 101 F.3d 1117 (6th Cir. 1996).  Because Sekmistrz has failed to allege that the policy constitutes "a direct and substantial interference with the right of marriage," her First Amendment claim must be dismissed. [7]  Id. at 1124.

---

[5] There is some uncertainty in Sixth Circuit case law regarding which constitutional amendment protects the right to marriage, as arising from the right to intimate association—the First Amendment or the Fourteenth Amendment.  See Dade v. Baldwin, 802 F. App'x 878, 883 (6th Cir. 2020).  The answer to this question is immaterial to the Court's analysis of Sekmistrz's claim.

[6] Defendants argue in their motion to dismiss that Sekmistrz's First Amendment claim should be dismissed because she has failed to allege the causation element of the test established in Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999): (i) engagement in protected conduct; (ii) an adverse action taken against the plaintiff; and (iii) a causal connection between elements one and two.  Mot. at 20.  Sekmistrz does not challenge this premise in her response.  But the Court need not engage with Defendants' analysis; the Thaddeus-X test applies only to First Amendment retaliation cases, and Sekmistrz has not alleged retaliation.

[7] Because the Court finds that Sekmistrz cannot establish First or Fourteenth Amendment violations, it need not address Defendants' argument that Ortiz is entitled to qualified immunity.

**B. State-Law Claims**

Because the Court grants Defendants' motion to dismiss as to the federal claims, the Court will use its discretion to decline to exercise supplemental jurisdiction over the remaining state-law claims by dismissing these claims without prejudice.   28 U.S.C. § 1367(c)(3); <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726–727 (1966) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

### III.  CONCLUSION

For the reasons explained above, the Court grants Defendants' motion to dismiss (Dkt. 31) as to the federal claims and dismisses without prejudice Sekmistrz's state-law claims pursuant to 28 U.S.C. § 1367(c)(3).

SO ORDERED.

Dated: August 26, 2024                                    s/Mark A. Goldsmith
      Detroit, Michigan                                MARK A. GOLDSMITH
                                            United States District Judge